# EXHIBIT F

Your Reference:
Our Reference:                  CXF/REU010019

Diamond McCarthy LLP
295 Madison Ave.
27th Floor
New York
NY 10017

**BY EMAIL ONLY TO:**
**Juliya.Arbisman@diamondmccarthy.com**

swanturton

68a Neal Street
Covent Garden
London WC2H 9PA

T: +44 (0)20 7520 9555
F: +44 (0)20 7520 9556

www.swanturton.com

25 September 2020

Dear Sirs

**Re: World-Check Report of Mr Patokh Chodiev**
**Our client: Refinitiv Limited**
**Your client: Mr Patokh Chodiev**

We write further to your letters dated 11 and 18 September 2020, and with regard to your client's World-Check report ("the Report").

**Your client's position**

As we understand it, your client's position is that:

a) The Report is inaccurate and therefore constitutes unlawful processing in breach of Articles 5(1)(a),(d) & 6(1)(f) GDPR;
b) The "*mere inclusion in World Check's database is incredibly prejudicial*";
c) The Report has had a "*negative affect*" on his professional life and a "*ripple effect*" on his personal life;
d) Unless our client erases the Report from World-Check, he will commence legal proceedings "*for damages suffered as a result of the Report*".

**Our client's position**

Our client is satisfied that the Report falls squarely within the data protection provisions of Articles 5 & 6 GDPR - not least because it is an aggregation of public domain information processed lawfully in the public interest. Within that context, our client believes your client's complaint is misconceived and unsustainable. We explain why below.

Before we confirm our instructions however, we wanted to touch upon your complaint in relation to our client asking Ms Maguire to provide comments on the latest version of the Report within 3 business days. As we see it, despite your view that it was an "*unreasonably short time*" and your reliance upon the Covid pandemic, we believe 3 business days was sufficient time for your client's appointed professional advisor to take instructions. Nevertheless, it would appear that even if Ms McGuire had responded within 3 days (or any period of time she would have considered reasonable) and had set out what we now know to be your client's position, our client would have reinstated the Report in any event. The '3-days' issue is therefore redundant.

Swan Turton LLP is a limited liability partnership
Registered in England with no OC348685
Authorised and regulated by the Solicitors Regulation Authority
A list of the members is open to inspection at 68a Neal Street, London WC2H 9PA

**Alleged unlawful processing**

Your client's position in this respect appears to be based on an overarching objection that there is no compelling legitimate ground for processing which overrides his rights. However, that position is unsupported and untenable for the following reasons:

1. Our client is satisfied that pursuant to Articles 5 & 6(1)(f) GDPR, its processing in respect of the Report is proportionate and objectively necessary for the legitimate interest of providing subscribers to World-Check information for the specific purpose of assisting them with their legal and regulatory requirements to undertake checks to protect the public from financial crime, fraud and serious misconduct or dishonesty.

2. The EDPB, having adopted the Article 29 Working Party's guidance on the issue, explicitly recognises that the prevention of fraud, misuse of services or money laundering are contexts in which the legitimate interests condition at Article 6(1)(f) GDPR shall be relied upon.

3. Critical to its provision of World-Check as a public interest service, our client has an obligation to subscribers to ensure that information in the public domain such as that reported about your client is included in World-Check to assist them in performing due diligence and other screening activities in accordance with their legal and regulatory obligations.

4. The World-Check service brings with it substantial public interest in accordance with Article 9(2)(g) GDPR and Sch. 1 DPA 2018 (including but not limited to Sch. 1, s12).

5. The Report reports information without offering any commentary, opinion or recommendations to subscribers of World-Check. It does not rate the information, nor does it provide advice or otherwise engage in evaluations or profiling of any data subjects. The use of categories within World-Check such as 'Individual' are necessary for the sake of navigation and utility of the service.

6. By virtue of confidential terms of business between our client and its World-Check subscribers it is agreed (amongst a number of non-disclosure confidentiality obligations)[1] that subscribers may not rely solely on the information contained within the database when making decisions about how to deal with any data subjects and that the inclusion of a data subject in the database should not automatically be taken to draw any particular inference (negative or otherwise) about them.

7. In addition to strict terms of business regarding World-Check usage, the online Report explicitly notifies users that its content was reported "*in one or more*" of its listed sources and that subscribers "*should not rely upon the content of this report without undertaking independent checks to verify the information contained therein*". *(Emphasis added).*

8. There are a number of clear caveats within the Report (amongst others) that require readers to assume that any negative allegations within any report are denied by the data subject.

9. The nature of the data is such that our client could not have reasonably been expected to notify your client about it, nor obtain his explicit consent to process it (Sch. 1(10)(1)(b) DPA 2018). Pursuant to Article 14, our client does nevertheless make available a fair processing notice on its website (found here) and any individual may contact Refinitiv to query whether their personal data is held in World-Check and request a copy of any such

---

[1] For the avoidance of any doubt, any reference and/or mere mention of any confidential terms of business within this letter does not and should not be taken (by the recipient or any other persons or body) as an express, collateral, nor implied waiver of confidentiality as to this document or any source material subscribers' terms of business or otherwise.

Swan Turton LLP is a limited liability partnership
Registered in England with no OC348685
Authorised and regulated by the Solicitors Regulation Authority
A list of the members is open to inspection at 68a Neal Street, London WC2H 9PA

   information (https://www.refinitiv.com/en/products/world-check-kyc-screening/am-i-listed-on-world-check).

10. A data controller's commercial interest in its data processing is not a bar to the necessity/legitimacy of data processing under data protection law.

11. In these circumstances where World-Check has never published that your client has a criminal conviction and/or has ever committed a criminal offence, we do not accept that the inclusion of his information within the Report necessarily constitutes the processing of data under Article 10 GDPR (or s11 DPA 2018). But even if it were held to be processing in that respect, our client would maintain that it is reasonable and necessary for screening purposes. In that regard, it is our view that our client's processing would also satisfy the requirements of:

    11.1   Article 9(2)(g) GDPR (or s10(3)&(5) DPA 2018) – as to processing necessary for reasons of substantial public interest with measures to safeguard interests of data subjects;

    11.2   Sch. 1 paragraphs 10, 11, 12 & 36 DPA 2018 – as to processing necessary for reasons of substantial public interest for the purpose of preventing or detecting unlawful acts;

    11.3   Pre-GDPR –

        a) Sch. 2 paragraph 6(1)) of the DPA 1998
        b) Paragraphs 1, 2 & 3 to the schedule of the Data Protection (Processing of Sensitive Personal Data) Order 2000 - on the basis that:

            i) On a reasonable view, processing the reported allegations was/is in the public interest;
            ii) Our client has always reasonably believed the Report to be in the public interest;
            iii) Again, notification and/or consent (re such information) could never reasonably have been sought, provided and/or obtained.

Against that background, our client is confident that its processing is compliant with data protection law on the basis that the processing is fair and lawful and that the data is processed for legitimate interests, in the substantial public interest. We should add here that our client has shared its processing rationale with the ICO and remains confident that its processing is lawful and GDPR compliant.

**Alleged inaccurate data**

Your client's allegations in respect of inaccurate data against our client appear to be predicated on the argument that the articles hyperlinked to the Report are "*factually incorrect*" and derived from "*unscrupulous organizations*". However, your client has failed to provide any explanation as to why Le Soir and L'Echo (for example) are allegedly 'unscrupulous' and/or what is 'factually incorrect' in the public domain. Your position is therefore vague and unsubstantiated. But then to compound the issue, your letter of claim refers to the "*alleged French investigation*" before going on to state that even if the information contained within the Report were true, due to French law, any such information reported in the public domain has been obtained illegally.

As we see it, whether the information published and in the public domain was obtained illegally (by Le Soir and/or L'Echo or others) does not clarify what your client is alleging to be inaccurate in respect of the Report. In short, your client's position is unclear as to whether you are contending that:

Swan Turton LLP is a limited liability partnership
Registered in England with no OC348685
Authorised and regulated by the Solicitors Regulation Authority
A list of the members is open to inspection at 68a Neal Street, London WC2H 9PA

   a) your client is not under investigation in France;
   b) the information contained within the Report is not in the public domain;
   c) the information contained with the Report has in any way been misunderstood or fabricated by our client.

If your client were to proceed to Court in this matter, we anticipate receipt of instructions to make a Part 18 Request, requiring your client to provide such reasonable and proportionate detail as to the alleged inaccuracy regarding him. Without such clarification our client has no case to answer and remains satisfied that, in line with the GDPR, it has reported accurately information which is currently in the public domain.

Your repeated suggestion that our client has breached GDPR because (as you have proposed) *any* reference to *any* investigation is inaccurate in any event because any discussion of on-going proceedings in France contravenes French law is misconceived. To be clear, our client has not reported on any confidential details of the investigation. Rather, it has reported that reportedly, according to sources available in the public domain, your client is under investigation in France. We note incidentally that you have not denied such.

As we see it, the information in the Report is either accurate or it is not – and your client is either unwilling or unable to demonstrate that it is not. We therefore fail to see how any allegation that Article 5(1)(d) has been breached can be maintained.

If your client believes the information available in the public domain is inaccurate and/or that the world press has breached any laws (as you allege) then we would suggest that your client contacts the relevant newspapers and magazines and take steps to correct the position. It should follow that, should your client secure any retractions and/or any public apologies from any press source or otherwise, our client would consider that new information for the purpose of ensuring that World-Check can be updated where appropriate.

In the meantime, should it allay any concerns your client still has in relation to the Report, and despite (i) the Report already including reference to his denial of the allegations; and (ii) World-Check's terms of business requiring all subscribers to assume that any negative allegations within any report are denied by the data subject, our client would consider adding a comment to the Report which references your client's position on what has been reported about him in the public domain. Should your client like to propose wording to this firm in that respect, we would take our client's instructions accordingly.

**Alleged adverse impact/damage**

We do not accept that our client could, on any reasonable view, be considered to be the cause of any alleged damage to your client. Notwithstanding your assertion that the Report has had a "*negative affect*" and "*ripple effect*" on your client's professional and personal life (respectively) and your opinion that the "*mere inclusion in World Check's database is incredibly prejudicial*", there is simply no evidence indicating that the Report has caused damage, and you have provided no support for any such contention.

It seems to us that any affects on your client's life were more likely impacted by the press he and his business interests have attracted around the world. We take this opportunity to remind you that as a result of a basic Google search of the name 'Patokh Chodiev', your client (by way of one example of his internet profile) features in a Guardian article dated 22 November 2013. That article, entitled '*Mining firm ENRC bids farewell to the Stock Exchange but its Uzbek and Kyrgyz creators are here to stay*' [2] reports that:

---

[2] https://www.theguardian.com/business/2013/nov/22/mining-enrc-leaves-london-stock-exchange

Swan Turton LLP is a limited liability partnership
Registered in England with no OC348685
Authorised and regulated by the Solicitors Regulation Authority
A list of the members is open to inspection at 68a Neal Street, London WC2H 9PA

> *"…Patokh Chodiev – plus his two business partners, Alexander Machkevitch, 59, and Alijan Ibragimov, 60 – a trio who largely became known in the City because of their links to a painful hit to many UK savers' pension pots. After floating their mining company, Eurasian Natural Resources Corporation (ENRC), on the London Stock Exchange in 2007, the company's shares were quickly propelled into the FTSE 100 and, therefore, into many British pension funds…<u>But the past two years have seen persistent allegations of corruption against the company</u>, along with a string of corporate governance rows, and the shares have crashed, prompting the trio to take the company private again…ENRC may be disappearing from the London Stock Exchange, but the professional and personal lives of the tycoons link them inextricably to the UK. …<u>One of their main businesses, private firm International Mineral Resources (IMR), is run out of London, several of their legal scraps are still being fought here, while ENRC continues to be investigated by the Serious Fraud Office for "fraud, bribery and corruption"</u>… the firm [IMR] has attracted controversy. It sold ENRC a business that the listed company's former lawyers say may have made "cash payments to African presidents", <u>while IMR is accused in the Dutch courts of "blatant fraud, exacerbated by bribery" by Russian fertiliser group EuroChem. IMR denies the accusations. ENRC and the trio deny all allegations of bribery and corruption."</u> (Emphasis Added)*

In light of such publicity, we do not see how your client would be capable of demonstrating that the Report (and its aggregation of publicly available information only) is the cause of any alleged damage (financial or reputational or otherwise). Nevertheless, should your client proceed in this matter, relying upon unsubstantiated allegations, we anticipate instructions to serve a Part 18 Request requiring your client to detail exactly how the Report has (as you allege) directly and adversely impacted on his life including but not limited to:

i) The names of the banks which your client asserts have closed his accounts as a direct result of the Report.
ii) Confirmation from those banks that they did in fact close accounts as a direct result of the Report.
iii) The names of the "*business counterparts*" that ("*after seeing the Report*") have made adverse inferences about your client.
iv) Confirmation from those business counterparts that they did in fact draw such adverse inferences <u>and</u> what those alleged adverse inferences are.

**Data Subject Access Request ("DSAR")**

Your firm made a DSAR in relation to your client on 18 September 2020. In response to that, in accordance with Article 15 GDPR, we enclose copies of all reports created by and held by our client in relation to your client. All archive copies of the Report are held by our client for legal and audit purposes only, and are not made available to subscribers following the date of any change to the Report as indicated by the "Version Created Date" in any subsequent entry.

**Erasure**

Our client is always open to considering any new information as to any data subject for the purpose of ensuring that World-Check can be updated where appropriate. To that end, if our client became aware of any information that would require sources to be removed or amended, then that relevant data would be updated accordingly. However, whilst we acknowledge your client's right to object under Article 21(1) GDPR, in these circumstances where our client's business activity is important to the global financial system and the Report is processed for the legitimate, specific and limited purpose of screening for the prevention of financial crime and serious misconduct (contexts in which the legitimate interests condition at GDPR Article 6(1)(f) shall be relied upon), we do not accept that your client has established any ground(s) to warrant

Swan Turton LLP is a limited liability partnership
Registered in England with no OC348685
Authorised and regulated by the Solicitors Regulation Authority
A list of the members is open to inspection at 68a Neal Street, London WC2H 9PA

a right to restrict under Article 18 GDPR, nor erasure under Article 17 GDPR (or otherwise in relation to the Report).

**Conclusion**

For the reasons set out above, we do not accept that your client has established any case against ours for any alleged breach of data protection law or otherwise, nor any entitlement to erasure of the Report.

Whilst you have not explained which proceedings your client would instigate in circumstances where our client did not erase or restrict the Report, in the interest of time and costs, please note that should your client issue proceedings, we anticipate receipt of instructions to robustly defend. Further, this letter would be drawn to the attention of the Court on any questions as to costs in that respect. We therefore invite your client to consider the points raised above with a view to withdrawing his complaint before significant costs are incurred.

Save for any additional comment your client would like our client to consider for inclusion in the Report, we trust this is the end of the matter.

Yours faithfully

**Swan Turton LLP**

Encs.

Swan Turton LLP is a limited liability partnership
Registered in England with no OC348685
Authorised and regulated by the Solicitors Regulation Authority
A list of the members is open to inspection at 68a Neal Street, London WC2H 9PA