# EXHIBIT M

**swanturton**
Solicitors

Third Floor
8 Baltic Street East
London EC1Y 0UP

T: +44 (0)20 7520 9555
F: +44 (0)20 7520 9556

www.swanturton.com

Your Reference:
Our Reference: REU010019

Diamond McCarthy LLP
295 Madison Ave.
27th Floor
New York
NY 10017
USA

**BY EMAIL ONLY TO:**
juliya.arbisman@diamondmccarthy.com
courtenay.barklem@diamondmccarthy.com

23 November 2020

Dear Sirs

**Re: World-Check Report of Mr Patokh Chodiev**

We write further to your letter dated 10 November 2020.

We have tried to engage with your client in this matter and do not find your rhetoric helpful. Neither do we intend to involve ourselves in needlessly argumentative correspondence. Instead, we note your chief complaints in relation to the documents provided to date and we set out our client's position below.

Before we do that however, in the interest of avoiding further unnecessary costs (and to assist the Court in due course if necessary), in addition to confirming that we are instructed by Refinitiv Limited only, we must also correct your position in relation to the appropriate data controller in this matter:

1. The Thomson Reuters Corporation ("Thomson Reuters") is a shareholder in Refinitiv Limited
2. Thomson Reuters and Refinitiv Limited are separate legal entities
3. Thomson Reuters is unconnected to World-Check
4. Refinitiv Limited is the owner and controller of World-Check
5. World-Check is a screening service and not a legal entity

It should follow that:

i) Our client can only provide the personal data it controls in relation to your client;
ii) Our client is only obliged to provide the personal data it controls in relation to your client
iii) Our client is not a 'joint-controller' with Thomson Reuters and/or any other entity (including World-Check as a service provided by our client);
iv) Our client cannot provide any data held by Thomson Reuters;
v) There is no "*arrangement*" between our client and Thomson Reuters that our client need "*disclose*";
vi) There is no "*gamesmanship*" or "*shirking*" of responsibility on the part of our client;
vii) Your reliance upon Article 26 GDPR and the notion of 'respective responsibilities' is not only inappropriate but also misconceived.

Swan Turton LLP is a limited liability partnership registered in England with registered no. OC348685
A full list of members is available for inspection at the above address
Authorised and regulated by the Solicitors Regulation Authority
VAT Registration number GB 864072618

Incidentally, we understand that "*arguendo*" is a term used in the US legal system. Whilst you remain at liberty to use it, as it has no standing within this jurisdiction, we do not intend to incur time and costs considering any points 'for the sake of it' or otherwise.

**Redactions and alleged document manipulation**

In addition to what we understand to be a general disbelief that there is not more personal data available in World-Check to disclose, you have complained specifically that our client has failed to provide information regarding the 'recipients' of the Report and is therefore in breach of Article 15(1) GDPR.

We do not accept that. As explained to your client on a number of occasions, our client is unable to confirm which of its subscribers have received the Report because it does not monitor or log the searches its subscribers' conduct. As to that, our client is not in a position to say who has accessed the Report or if it has been accessed at all. But then Article 15(1) does not (as you would suggest) require our client to provide the names of any such recipients in any event. Instead, the GDPR obliges it to provide information in relation to the "*recipients or categories of recipient*" (emphasis added) to whom your client's data has been or may be disclosed.

To that end, as our client and this firm have confirmed previously, the categories of recipients to whom your client's data may have been disclosed are financial institutions, corporates, professional services firms, governments, law enforcement agencies and regulators. This is also set out in our client's privacy statement (which has already been brought to your attention).

As we explain in more detail below, the documents you have been provided with to date represent the results of our client's searches against your client's name relating to World-Check. Redactions and/or any alleged alterations (as you say) have been undertaken to maintain confidentiality where appropriate and in line with data protection laws.

We remind you that you are currently engaged with our client's data privacy team directly in relation to your DSAR pertaining to any personal data held by our client more generally (i.e. outside of the World-Check database). We also remind you that your client is only entitled to his personal data and not that of third parties.

You state that the ICO directs that where a data controller chooses to withhold third-party information, it is obliged to communicate as much of the requested information as it can. We agree, and confirm that by virtue of the redacted information provided, our client has done just that.

Further, our client remains confident that the information it has disclosed meets the requirements of Article 14(1)&(2) GDPR, and that your data requests seek steps our client is not obliged to take or information your client is not entitled to receive.

**Alleged incomplete disclosure**

In summary, you have complained that the result of your client's DSAR relating to World-Check is incomplete and inaccurate and ultimately in breach of Article 15 GDPR. We do not accept that contention for the reasons set out below.

Confidential documents

Notwithstanding your reference to Article 15(d), Article 15(h) and Recital 63 GDPR, we maintain that our client is not obliged to provide any data subject with any "*internal documents and training materials about controlling and processing data and about internal workflow and decision making when identifying, creating, and approving a potential report*".

For the avoidance of any doubt, Article 15(d) provides that where possible, a data controller should confirm the envisaged period for which the personal data will be stored or, if not possible, the criteria used to determine that period. That does not oblige (as you suggest) our client to disclose its retention policy document. However, should it allay any concerns your client has regarding data retention, we take this further opportunity to confirm that, absent any documentation to demonstrate that the investigation has been dropped and considering the

length of time investigations into financial crime can take, your client's data will be retained within World-Check for 7 years. Our client would update the Report if any charges are brought against your client and/or he is convicted. In the event that the investigation is discontinued, the information would be removed. Given that any such discontinuance may not be reported in the public domain, we would invite your client to provide evidence of the same directly to our client.

Turning to Article 15(h), we remind you that this provision provides for access to data which is processed by way of automated decision-making. However, our client does not rely upon any automated decision making in producing World-Check reports and therefore your client has never been subjected to processing in respect of Article 22(1) GDPR. It should follow that there has been no breach in this respect - on the simple basis that there is no logic and/or consequence of such processing to disclose to your client.

Finally, Recital 63 refers to a general right of access to personal data under the GDPR. It is therefore unclear why it is being cited to support your argument that your client is entitled to confidential company documents and/or those beyond the scope of Article 15.

"An isolated two-month period"

You have complained that the DSAR is incomplete because it *"relates primarily to an isolated, two-month period that does not encompass the time frame pertaining to the generation of the Report which Mr Chodiev requested World-Check to delete, as well as World-Check's continuing justification for publishing the Report…"*. However, in addition to providing you with all versions of the Report to date, our client ran a search for any documents pertaining to your client's personal data and, save for privileged internal emails relating to the Report, the "*isolated period*" is the result.

By way of clarification, World-Check data is not stored in any alternative systems, nor is there (as your position would suggest) any internal consultation process between World-Check staff or otherwise which produces a multitude of data in and around any data subject's inclusion in the World-Check database.

All of the information in World-Check comes from public sources (e.g. official records, news sources, etc.). It is compiled by hundreds of trained analysts based in operational centres around the globe. The analysts input their findings directly into World-Check in line with stringent guidelines and without any unnecessary internal consultation process. Information is inputted and updated in World-Check on a proactive basis (in accordance with specific policies designed to ensure fairness and proportionality of the data). The Report is no exception. It is a standalone document without the attendant preparatory documents, drafts, research or "*other due diligence*" you appear to have expected or believe exist.

The fact is that, beyond the versions of the Report, there has been limited data processed by our client in and around your client relating to World-Check. As you will note from the disclosure provided on 30 October, our client was not processing data in relation to the Report. Rather, World-Check subscribers (in the process of undertaking their own due diligence on your client and/or Eurasian resources Group) were querying why your client was not in World-Check and client services were confirming why he was not.

With all of that in mind, it is unclear to us how you reached the conclusion that documents have been held back or any searches limited to a specific time frame.

Contrary to your assertions that our client's disclosure is incomplete and inaccurate, our client is satisfied that your client has received the data to which he is entitled "*from first processing of [his] data through to the present day*" and it would contend that your demands for additional documents to support your allegations are unsubstantiated.

For the avoidance of any doubt, your client is not entitled to any information that is privileged and any such information does not fall to be disclosed under a DSAR.

<u>"Continuing justification"</u>

Insofar as our client's position on the *"continuing justification"* for the Report, this has been made plain on several occasions: It processes data pursuant to Article 6(1)(f) GDPR on the basis that it is necessary for the legitimate interest of providing a service which assists subscribers with due diligence and other screening activities in accordance with their legal and regulatory obligations. Subscribers use the information in World-Check to conduct checks on their own customers, related persons, and on their suppliers to prevent financial crime and substantial misconduct. Further, the type of data our client processes can at times include special category data, which our client processes in the substantial public interest pursuant to Article 9(2)(g) GDPR – and more specifically for the purpose and in the interest of preventing and detecting unlawful acts, protecting the public, regulatory requirements, preventing fraud and/or terrorist financing or money laundering (in line with conditions 10, 11, 12, 14 & 15 of Part 2, Schedule 1 DPA 2018).

**Appendix A**

We have responded to your 'Appendix A' comments by way of our 'Appendix A1' (below).

In the interest of allaying any concern your client may still have regarding alleged "*missing content*", and to demonstrate that he has received all of the data to which he is entitled, we enclose the same search results as to his DSAR (i.e. zip.file from 30 October 2020) but now fully redacted (as opposed to any text removed and/or replaced) for the sake of confidentiality.

**Conclusion**

Our client would accept that it was late in responding to your client's DSAR. However, it was no more than an oversight on the part of our client as it undertook internal checks and searches against your client's name (in accordance with its obligations under GDPR). We do not accept that the delay constitutes a "*dramatic failure of the GDPR obligations*". In any event, we do not believe that your client would be capable of demonstrating that any harm or distress has been caused as a result.

We note your continuing threat of proceedings (this time by reference to both the UK and the New York court systems). But as far as our client is concerned, it has engaged with your client on disclosure and is satisfied that its response to your client's DSAR complies fully with s.7 DPA 1998/Articles 15 & 14(1) and (2) 15 GDPR. In short, your client has been provided with everything he is entitled to receive and therefore we do not believe that the proceedings you continue to threaten would succeed.

Even if your client had a viable complaint in relation to disclosure or his wider allegations in relation to the Report (which is very much denied), the information provided to date should be more than sufficient for assessing his position as anticipated by the Protocol.

Should your client proceed in this matter (be it an application or issued claim), this letter will be drawn to the Court's attention on costs.

Yours faithfully

**Swan Turton LLP**

Encs.

**Appendix A1**

| Document | Comment |
|---|---|
| Client Services Communication 1 | A name was replaced and other names, email addresses and signatures of email chain participants were removed (now redacted) because it relates to confidential and/or third-party data which falls outside Article 15 GDPR and which your client is not entitled to receive.<br><br>No text was removed from the email dated 30 March at 4:20pm. |
| Client Services Communication 2 | The name of the client in the subject line was replaced and the name of another individual subject together with names, email addresses and signatures of email chain participants were removed (now redacted) because it all relates to confidential and/or third-party data which falls outside Article 15 GDPR and which your client is not entitled to receive.<br><br>The missing text to which you refer (i.e. after "*I will keep in touch on or before Oct*") appears to be a formatting error and has been reinstated.<br><br>The blank page to which you refer does not relate to any data removed. It was a formatting error and has been deleted entirely. |
| Client Services Communication 3 | Any names redacted and/or email addresses and signatures of email participants (previously removed) relate to confidential and/or third-party data which falls outside Article 15 GDPR and which your client is not entitled to receive. |
| Client Services Communication 4 | The names, email addresses and signatures of email participants previously removed (and now redacted) relate to confidential and/or third-party data which falls outside Article 15 GDPR and which your client is not entitled to receive.<br><br>For the avoidance of any doubt, the email to which you refer after "*Kind regards*" has not been altered. Any gapping in text must be due to formatting.<br><br>There was an email which preceded that dated 25 April 2018 at 10:54. However, it was not about your client, nor does it contain his personal data. Therefore, our client is not obliged to disclose it. |
| Client Services Communication 5 | The names, email addresses and signatures of email participants and any other "*material relating to other profile(s)*" were removed (now redacted) because it all relates to confidential and/or third-party data which falls outside Article 15 GDPR and which your client is not entitled to receive.<br><br>The blank page to which you refer does not relate to any data removed. It was a formatting error and has been deleted entirely. |
| Client Services Communication 6 | The names, email addresses and signatures of email participants and any other "*material relating to other profile(s)*" were removed (now redacted) because it all relates to confidential and/or third-party data which falls outside Article 15 GDPR and which your client is not entitled to receive.<br><br>The blank page to which you refer was a formatting error and has been amended as enclosed. |
| Client Services Communication 7 | The names, email addresses and signatures of email participants were removed (now redacted) because it all relates to confidential and/or third-party data which falls outside Article 15 GDPR and which your client is not entitled to receive.<br><br>No material has been removed or redacted between "*Hello, team*" and the next sentence. Similarly, there is no email after the word "*Thanks*". Rather, the name of the author of the email was removed (now redacted) in the interest of confidentiality. |

| | |
|---|---|
| Attachment to Client Services Communication 7 | Names have been redacted because it is confidential and/or third-party data which falls outside Article 15 GDPR and which your client is not entitled to receive. |
| Client Services Communication 8 | The names, email addresses and signatures of email participants, a subject line and any other "*material relating to other profile(s)*" were removed (now redacted) because it all relates to confidential and/or third-party data which falls outside Article 15 GDPR and which your client is not entitled to receive.<br><br>The blank page to which you refer does not relate to any data removed. It was a formatting error and has been deleted entirely. |
| Attachment to Client Services Communication 8 | Material has been redacted because it is confidential and/or third-party data which falls outside Article 15 GDPR and which your client is not entitled to receive. |
| Client Services Communication 9 | The names, email addresses and signatures of email participants and any other "*material relating to other profile(s)*" were removed or replaced (all now redacted) because it relates to confidential and/or third-party data which falls outside Article 15 GDPR and which your client is not entitled to receive. |
| Internal communication – Screening Online product | The names, email addresses and signatures of email participants and any other "*material relating to other profile(s)*" were removed and/or replaced (now redacted) because it all relates to confidential and/or third-party data which falls outside Article 15 GDPR and which your client is not entitled to receive. |