# EXHIBIT Q

# DIAMOND McCARTHY LLP
Attorneys & Counselors

295 Madison Avenue | 27th Floor | New York, NY 10017 | Phone: 212-430-5400

April 16, 2021

**VIA EMAIL**

John Graham
john.graham@swanturton.com
SWANTURTON
68a Neal Street
Covent Garden
London WC2H 9PA

**Re: Final Letter Before Action - Mr Patokh Chodiev/ World-Check/Refinitiv**

Dear Mr. Graham:

We write in one last effort to resolve the concerns we have raised on behalf of our client Mr Patokh Chodiev for the better part of the last year.

As documented in our lengthy exchange of correspondence, we have made a good faith effort to get Refinitiv to withdraw its publication in the World-Check database of a poorly supported and damaging report on Mr Chodiev ("Report") and to produce documents in response to his Data Subject Access Request ("DSAR"). Despite our client's repeated objections that he does not consent to the misuse of his personal data by World-Check, the Report continues to appear in its database, and you have failed to provide a full and proper response to the DSAR.

Some four months since you averred that a complete response to the DSAR had been provided, and two further turns of correcting defects in your production, your 22 January 2021 letter admitted to what we have said all along, that World-Check's policies and procedures are inadequate and ineffective. Your letter says: "[O]ur client has conducted a further check of information held and has discovered that it inadvertently failed to provide additional documents in response to your client's subject access request... Our client has instructed us that it has already taken appropriate steps in relation to these gaps in disclosure, including improving its internal processes to ensure that this oversight will not happen again. Our client nevertheless sincerely apologizes for the delay in providing this additional information..."

Further, we remain unimpressed with your client Refinitiv's position that it has limited access to the relevant, responsive documents. Your 22 January letter claims that Refinitiv is not a joint-controller with TRC and that "[t]here is no 'true relationship' to expose between [Refinitiv] and TRC." According to you, TRC is "now only a shareholder" and TRC and Refinitiv are "completely separate legal entities," with TRC being totally "unconnected to World-Check".



April 16, 2021
Page 2

However, in TRC's 2019 annual report filed with the SEC on 10 March 2020, the company disclosed that "[u]nder a transition services agreement, Refinitiv agreed to provide Thomson Reuters with data center services through September 30, 2020 and various network services through September 30, 2021 (and [TRC] agreed to provide certain data center and network services to Refinitiv through those dates)".[1] The report informed TRC investors that the "multi-year transition services agreements for a wide range of certain services, notably in technology" and that "during the transition services period, [Thomson Reuters] management and employees may be required to divert some of their attention away from our business in order to provide services to Refinitiv".[2] TRC's 2020 annual report includes language to the same effect, clarifying that the various data center and network services exchanged under the transition services agreement was not substantially completed until 3 March 2021.[3]

Indeed, a document accompanying your 22 January 2021 production contains a time stamp on the email from customer support to World-Check's client who requested the Report revealing that the sender was located in the United States. It therefore appears that there is a continuing relationship between Refinitiv/World-Check and Thomson Reuters contrary to your position. Moreover, it is clear that the relevance of Refinitiv and of the US as a jurisdiction, extends further than purely for the procurement by World Check of technological and data support from its US parent. It can be assumed, with some certainty, that there exists a necessary nexus between Refinitiv and World Check for algorithmic controls and data management per se, as well as, logically, a degree of involvement by the management of Refinitiv in its subsidiary's business model.

From the totality of our correspondence and the smattering of documents produced, even though there were significant redactions, it is now apparent that:

- Refinitiv has maintained the Report despite Mr Chodiev's demonstrating that the Report's purported sources are unreliable and unverified.

- Refinitiv has not produced all responsive documents in its custody or control or that are accessible to it with good faith efforts to provide a comprehensive response to his DSAR.

- The inclusion of Mr Chodiev in the World-Check database appears to result from an effort by Refinitiv's clients to have him included on the database. As a result, Refinitiv either allowed itself to be instrumentalized by certain third parties or knowingly participated in perpetuating unverified information, we assume in the pursuit of a profitable business model.

---

[1] **THOMSON REUTERS 2019 ANNUAL REPORT** at page 17, https://ir.thomsonreuters.com/static-files/e16cf13e-228b-4abf-97f2-e626fda56871.
[2] **THOMSON REUTERS 2019 ANNUAL REPORT** at page 25.
[3] **THOMSON REUTERS 2020 ANNUAL REPORT** at page 19, https://ir.thomsonreuters.com/node/27631/html#d15051dex991.htm



April 16, 2021
Page 3

- Refinitiv appears to have covered up this wrongdoing by third-parties by refusing to acknowledge or seeking to deny the on-going close nexus between itself and its subsidiary, thus making excuses why it could not produce all documents in its possession or control or that would be accessible to it with good faith efforts.

- Refinitiv failed to train its analysts to vet and verify data sources or they ignored such training in publishing the report on Mr Chodiev.

- Refinitiv claims that it does not rely on any algorithmic or automated decision-making, but its own documents show the opposite: Refinitiv relies on such a system to "score" articles. We note, however, that it appears that these scores may then be manipulated to justify publishing a report on a targeted individual.

- Refinitiv admits that its policies and procedures regarding the handling of personal data are important to evaluate whether it is compliant with the GDPR and DPA. But Refinitiv has also failed to produce any of its internal policies and procedures regarding how it collects personal data, how it verifies the accuracy of the data it collects and publishes, how its use of personal data is for a legitimate and necessary purpose, and how its responds to DSARs. These policies should be provided by return.

- Refinitiv's treatment of Mr Chodiev, who is originally from Uzbekistan, a Central Asian republic, a Russian (as well as Belgian) national, and a Muslim, raises concerns about whether Refinitiv explicitly or implicitly targets, or is otherwise biased against, certain ethnic, national or religious groups.

In view of this response, Mr Chodiev has no choice but to pursue all legal recourse available, including filing suit or instituting discovery proceedings in other jurisdictions. Our client reserves all his rights to the full extent of the law, including, without limitation, the laws of England and Wales, and the law of New York.

Yours faithfully,

Diamond McCarthy LLP