# EXHIBIT C

# MUSANA PLUS SERVICES LTD

10-11 Park Place<br>
Floor 2<br>
London SW1A 1LP

Ms Deborah Kemp
World Check/Thomson Reuters
deborah.kemp@thomsonreuters.com;
contact@world-check.com

**BY EMAIL – URGENT**

24 August 2020

Dear Ms Kemp,

**Request to delete the World Check record for Patokh Chodiev, a citizen of Belgium (as published on 17th August) ("Report")**

I write further to my letter dated 7 August 2020 and in response to your email dated 11 August 2020.

We are disappointed with World Check's decision to publish an inaccurate and unsubstantiated record on Mr. Chodiev. We are particularly concerned as this update is potentially damaging to the reputation of Mr. Chodiev, who, by World Check's own supporting evidence is presented as a reputable businessman.[1]

**Insufficient time to respond**

As you are aware, I was given only three days to share my comments on the re-instatement of Mr. Chodiev's record on World Check and my request for an additional three business days to respond was ignored. Three days are insufficient to provide a detailed explanation or comment regarding such reinstatement, and impossible owing to the logistical difficulties posed by the global health crisis. As previously stated, I did not have access to my email and I was travelling back from France to avoid the imposition of quarantine due to Covid-19. I was therefore unable to respond within the unreasonably brief timeframe. Instead of following up with us regarding our comments or even waiting for an acknowledgment of receipt of your 11 August 2020 email, World Check reinstated the Report.

Whilst we recognize the Report's deletion of the term "indicted" from the original record, for the reasons expressed below, we still believe that reinstating Mr Chodiev on the World Check database is unwarranted.

---

[1] https://azbigmedia.com/business/patokh-chodiev-biography-of-a-successful-businessman/

## MUSANA PLUS SERVICES LTD

I have now reviewed the three foreign media sources cited in your 3 August 2020 email and there are serious concerns regarding their veracity. You state that your research team has "noted that…Mr. Chodiev has reportedly been indicted for laundering of tax fraud". As per World Check's website, it prides itself on providing its customers with valuable assistance in conducting due diligence and employs "hundreds of World-Check research analysts [to] gather *verifiable public domain information*."[2] However, as explained below, the three articles cited fail to support the standards of World Check as advertised, and the Report therefore poses a reputational threat not only to Mr Chodiev, but also to World Check as a purveyor of reliable and credible due diligence information.

**General observations**

The articles on which World Check relies to justify the creation of a Report on Mr Chodiev do not represent a complete or even factually correct information on Mr Chodiev's alleged involvement in the so-called "Kazakhgate" matter. As we have explained, there are currently no allegations or charges against Mr Chodiev and so to establish a record that relies exclusively on press articles which report that there are, without checking the credibility or source of this information is incorrect and misleading for any third party reviewing the Report.

For reasons expanded upon herein, we respectfully request that World Check retract the Report, to ensure that World Check maintains its research standards designed to ensure the accuracy, reliability and *relevance* of using personal data in this manner.

**AzBig Media article**

Reviewing each supporting article in turn, the *AzBigMedia* article in no way supports the Report. Rather, it contradicts the factual summary of the Report. The AzBig Media article simply explores the many successes Mr Chodiev has enjoyed during an illustrious career, including being awarded the Order of Honor in Kazakhstan. This article does not, in any way, support the reinstatement of Mr. Chodiev's Record on World Check.

**Le Soir and L'Echo articles**

On a closer review of the content of both articles, it is difficult to see why World Check would seek to rely on these. For one, each was published on exactly the same day, within only 55 minutes of each other. In fact, the *L'Echo* article relies solely on information from second-tier news outlets, including *Le Soir* as well as *Le Vif* and *De Standaard*. Similarly, rather than basing its contents on a credible source, the *Le Soir* relies on "information from *Soir, Standaard* and *Vif / L'Express*." None of the four newspapers, which cross-reference one another as information sources on the subject, are able to indicate an independent and

---

[2] https://www.refinitiv.com/content/dam/marketing/en_us/documents/brochures/world-check-risk-intelligence-brochure.pdf.

## MUSANA PLUS SERVICES LTD

verifiable information source, be it a warrant or legal document or discussion with investigative or authoritative officials, or otherwise provide any indication of their sources.

### Substance of French Judicial Investigation – A Closed File

As you will have noted, the above articles allege that there is an ongoing French Judicial Investigation into "Kazakhgate". I would like to point out that, under French Law, an ongoing criminal investigation must remain entirely confidential and is protected against disclosure to third parties[3]. This is, of course, to protect the rights of those under investigation and to ensure that due process is followed objectively without any external influence or interference. Indeed, because any investigation by French authorities is lawfully expected to remain confidential, neither Mr Chodiev, nor any third party nor I can comment on the substance or context of it. Therefore, by authoring the Report, World Check has become complicit in the spreading of misleading and potentially illegally obtained information. This is to say nothing of the fact that these articles necessarily do not constitute "verifiable" or "reputable" public domain information, but is an additional factor to take into account before lawfully protected confidentiality is breached, as it is through the publication of the Report.

### The Presumption of Innocence until proven otherwise

In any event, the two articles referred to in the Report merely imitate unsubstantiated and factually incorrect allegations made by other media outlets that give no indication of the veracity of such information, while the third article lauds Mr Chodiev's success. Further, even if the statements contained in the articles were true, they are nevertheless based on information which should rightfully have been kept confidential. If a court of law has not established evidence of corruption and bribery, it is unfair and indeed without foundation for World Check to infer an extant risk, and furthermore to project such a risk onto an individual, to his detriment.

The *Le Soir* and the *L'Echo* articles contend that the Belgian authorities (the only formal legal authority to reach a decision on the matter) recently concluded there was nothing implicating Mr Chodiev. Mr Chodiev has been a victim of certain interests which use publication of inaccurate and biased information to damage Mr Chodiev's reputation with wanton disregard. This information was published out of context and thus encouraged incorrect and damaging conclusions to be drawn by the press and consequently, it appears, by World Check.

As you may recall, World Check previously issued a report on Mr Chodiev's (unproven) involvement with the "Kazakhgate" matter. In my letter to you dated 2 October 2014, I articulated the many serious issues with basing Mr Chodiev's PEP status in any way on the Kazakhgate matter and acknowledging those serious issues, Mr Chodiev's record was

---

[3] See Article 11, French Code de Procédure Pénale

removed from World Check. I would also request you to note that the Kazakhgate matter is now almost a decade old and, as two of the articles you supplied point out, the Belgian investigation of Mr Chodiev has come to an end. An inaccurate and misinformed French reporters' alleged attempt to resurrect a stale case cannot possibly justify the Report.

Furthermore, World Check is a website for profit and not for philanthropic objectives. World Check's Privacy Statement states that *"Thomson Reuters will act to prevent inaccurate, outdated, irrelevant or excessive Personal Data being processed in World Check."* For World Check to retain a reputation for being an objective, fair and responsible information service provider, as it seeks to do, it needs to adopt a more rigorous approach to its choice of information sources, and needs to continually reassess the information already published to ensure that it is not outdated. Furthermore, its methodology does not fall in line with the expectations of the justice system, which is based on the centrality of the rule of law and the presumption of innocence and of equality.

## Data Handling and Protection Responsibilities under General Data Protection Regulation (2018) ("GDPR")

Finally, as World Check recognizes in its Product Information: "For the purposes of EU data protection laws, Refinitiv Limited acts as controller of personal data in the World-Check database." Refinitiv (and World Check) thus must abide by the strictures of the GDPR with respect to Mr Chodiev's personal information.

Article 5(1)(d) of the GDPR requires that "personal data," such as that contained in the Report, be "accurate" and that "every reasonable step must be taken to ensure that personal data that are inaccurate, having regard to the purposes for which they are processed, are erased or rectified without delay."

Article 6 prohibits processing of personal information except in six situations (none of which are met here), and Article 10 prescribes further limitations for "personal data relating to criminal convictions and offences," prohibiting processing of such information except "under the control of official authority or when the processing is authorised by Union or Member State law providing for appropriate safeguards for the rights and freedoms of data subjects."

As you are aware, the GDPR also grants "data subjects" like Mr Chodiev expansive rights regarding his personal information, including the right to obtain the erasure of personal data concerning him without undue delay when, *inter alia*,

> (c) the data subject objects to the processing pursuant to Article 21(1) and there are no overriding legitimate grounds for the processing, or the data subject objects to the processing pursuant to Article 21(2);
>
> (d) the personal data have been unlawfully processed;

**MUSANA PLUS SERVICES LTD**

> (e) the personal data have to be erased for compliance with a legal obligation in Union or Member State law to which the controller is subject;

Article 21 of GDPR also affords Mr Chodiev the right to object on the following grounds:

1. The data subject shall have the right to object, on grounds relating to his or her particular situation, at any time to processing of personal data concerning him or her which is based on point (e) or (f) of Article 6(1), including profiling based on those provisions. The controller shall no longer process the personal data unless the controller demonstrates compelling legitimate grounds for the processing which override the interests, rights and freedoms of the data subject or for the establishment, exercise or defence of legal claims.

2. Where personal data are processed for direct marketing purposes, the data subject shall have the right to object at any time to processing of personal data concerning him or her for such marketing, which includes profiling to the extent that it is related to such direct marketing.

The Report on its face violates Article 10 of the GDPR which prescribes further limitations prohibiting processing of such information except "under the control of official authority" or when the processing is authorised by Union or Member State law providing for appropriate safeguards for the rights and freedoms of data subjects" (emphasis applied). World Check is not an "official authority," and contrary to authorizing the processing of information relating to the alleged investigations into Mr Chodiev, French law requires that it be kept strictly confidential. For this reason, it is quite clear that World Check has not complied with the requirements under Article 5(1)(d) of the GDPR regarding the evaluation of the accuracy of the Report. As explained above, the articles cited by World Check cannot reasonably be relied upon.

Additionally, under Article 17 of the GDPR, World Check must retract Mr Chodiev's Report because it has no valid basis under Article 6 of the GDPR for processing his information in this manner. Based on World Check's Privacy Statement, it is anticipated that World Check will justify its use of personal information on the basis that it serves the public interest. But neither World Check's customers, nor the public, possess a significant interest in learning of unsubstantiated and unproven allegations regarding a matter initiated almost ten years ago, which has been resolved, and by the drawing inferences in the mere manner of generating a Report, this standard is clearly breached.

**For what purpose is such information held and highlighted to clients by World Check?**

In publishing the Report about Mr Chodiev, World Check is not aiding "in ensuring that financial crime, fraud and serious misconduct or dishonesty are prevented and detected." According to the articles relied upon by World Check, the Belgian authorities (the only formal legal authority to reach a decision on the matter) recently concluded there was nothing implicating Mr Chodiev in the Kazakhgate matter. On the contrary, rather than protecting the

**MUSANA PLUS SERVICES LTD**

public, World Check, by generating this Report, is proliferating baseless accusations and misinformation through the inference of impropriety, because there are no "neutral" or positive entries which World Check maintains, or includes as its source data which seeks to balance the picture. In such manner, it impliedly tarnishes the reputation of an innocent and upstanding businessman.

If public policy and the rule of law in France were served by making allegations public, investigations would not be subject to confidentiality. World Check claims, "We process information about actual or alleged criminal offences on the basis that it is authorised by applicable law." This claim is clearly false in this case, as it is evidently spreading news regarding investigations without respecting the legal requirement of these investigations to remain confidential. The publication of information about unsubstantiated, confidential investigations does not constitute a "legitimate ground[] for the processing," much less one that overrides the reputational damage suffered by Mr Chodiev. Separately and independently, because the fact of the investigations was to be kept confidential under French law, the information World Check seeks to use has been "unlawfully processed."

**Protection of Mr Chodiev's Reputation**

Given the irresponsible manner in which the Kazakhgate matter has been widely reported, the fact that Mr Chodiev has been exonerated of all wrong-doing by the Belgian Court and the fact that we currently await a similar closure with respect to the French process, Mr Chodiev has issued libel actions against certain French and Belgian individuals to ensure that his reputation is no longer unjustly tarnished by the Kazakhgate matter.

**Conclusion and Reservation of Rights**

For all the above reasons, I respectfully request that you delete Mr Chodiev's Record from the World Check database. There is no reasoned basis for issuing a Report that is misconceived, based on incomplete information relating to a confidential investigation into events that occurred almost a decade ago. For the avoidance of doubt, Mr Chodiev will consider pursuing all available legal recourse available to him, as others have done against World Check in the past.[4] World Check promises that it "will honour any rights you have under applicable data protection laws." Given our previous exchanges to date, I expect that you will be able to adopt a sensible and responsible approach with respect to removing erroneous, biased and outdated data related to Mr Chodiev.

Yours sincerely,

Kate Maguire

---

[4] https://globaldatareview.com/data-privacy/former-guantanamo-inmate-sues-refinitiv-over-global-risk-database.